IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 4:19-CR-716 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | |
| | ) | |
| REUBEN RANKIN, | ) | GOVERNMENT'S TRIAL BRIEF |
| | ) | |
| Defendant. | ) | |

Now comes the United States of America, by and through counsel, Bridget M. Brennan, United States Attorney, and Carol Skutnik, Edward F. Feran, and Vanessa V. Healy, Assistant United States Attorneys, and respectfully submit the following trial brief in accordance with the Court's Criminal Pretrial Order.

## I.     Controlling Law

Defendant Reuben Rankin is charged with: 1) Assault of a Federal Officer, in violation of 18 U.S.C. §§ 111(a) and (b); 2) Using and Discharging a Firearm During the Commission of a Crime of Violence, in violation of 18 U.S.C. § 924(c); 3) Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g); 4) Sex Trafficking of a Minor, in violation of 18 U.S.C. § 1591(a); and 5) Production of Child Pornography, in violation of 18 U.S.C. § 2251(a). The following outlines the elements with supporting caselaw for each of these charges:

### A.     COUNT 1

Count 1 of the indictment charges Defendant Ruben Rankin with Assault of a Federal Officer, in violation of 18 U.S.C. § 111(a) and (b).  The statute provides:

(a) **In general**. --Whoever--

(1) Forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or

(2) Forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,

Shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

(b) **Enhanced penalty**. –Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 111. The statute sets forth "three separate crimes whose elements must all be submitted to a jury." *United States v. Gagnon*, 553 F.3d 1021, 1024 (6th Cir. 2009). Two crimes are established in § 111(a): a misdemeanor ("cases involving 'only simple assault'") and a felony ("all other cases"). *Id.* (quoting 18 U.S.C. § 111(a)). A felony violation occurs when a defendant forcibly commits "*any* of the prohibited actions listed in § 111(a)(1) and § 111(a)(2), while 'all other cases' covers the commission of these same violations *plus* the intent to commit a felony or resulting physical contact from forcible (and thus intentional) action." *Id.* at 1027. A defendant commits the third crime—an "aggravated felony"—by violation § 111(b), which prohibits "violations of § 111 that either involve a deadly or dangerous weapon or result in bodily injury." *Id.* at 1024.

Because the indictment charges Rankin with violating § 111(a) and (b), the Government must prove all the following elements beyond a reasonable doubt:

(1) The defendant forcibly

(2) Assaulted, resisted, opposed, impeded, intimidated, or interfered with

(3) A federal officer

(4) In the performance of his duties

2

(5) The defendant used a deadly or dangerous weapon or inflicted bodily injury.

*United States v. Rafidi*, 829 F.3d 437, 445 (6th Cir. 2016) (citing *United States v. Kimes*, 246 F.3d 800, 807 (6th Cir. 2001)).

    B.   <u>COUNT 2</u>

Count 2 of the indictment charges Rankin with Using, Carrying, and Discharging a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(i)(A)(iii).  The statute provides in relevant part:

**(c)(1)(A)**

[A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—

**(iii)**
if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(i)(A).

To find the defendant guilty of this count, the Government must prove all the following elements beyond a reasonable doubt:

(1) The defendant committed the crime charged in Count 1;

(2) The defendant knowingly used or carried a firearm; and

(3) The use or carrying of the firearm was during and in relation to the crime charged in Count 1.

Sixth Circuit Pattern Jury Instructions, 2019 Edition, § 12.02.

If the jury finds the Government has proven the three elements above beyond a

reasonable doubt, they must then separately determine whether the firearm was discharged, even

accidentally, using a special verdict form.[1]

C.    COUNT 3

Count three of the indictment charges Rankin with Felon in Possession of a Firearm and

Ammunition, in violation of 18 U.S.C. § 922(g)(1).  The statute provides:

> It shall be unlawful for any person who has been convicted in any court of, a crime
> punishable by imprisonment for a term exceeding one year … to … possess in or
> affecting commerce, any firearm or ammunition[.]

18 U.S.C. § 922(g)(1).

To find the defendant guilty of this count, the Government must prove all the following

elements beyond a reasonable doubt:

(1)  The defendant had been convicted of a crime punishable by imprisonment for
     more than one year;

(2)   The defendant, following his conviction, knowingly possessed the firearm
and/or ammunition specified in the Indictment;

(3) The specified firearm and/or ammunition crossed a state line prior to the alleged
possession; and

(4) At this time of his possession of the firearm and/or ammunition, the defendant
     had knowledge of this conviction;

Sixth Circuit Pattern Jury Instructions, 2019 Edition, § 12.01; *United States v. Kincaide*,

145 F.3d 772, 782 (6th Cir. 1998); *Rehaif v. United States*, 139 S. Ct. 2191, 2196 (June 21, 2019)

(holding that the Government must prove both that the defendant knew he possessed the firearm

and that he knew of his prior conviction).

---

[1] Forcibly assaulting a federal officer with a deadly or dangerous weapon or inflicting bodily
injury, § 111(a) and (b), is categorically a crime of violence that may be prosecuted in a Court of
the United States.  *United States v. Rafidi*, 829 F.3d 437, 446 (6th Cir. 2016).

D.    <u>COUNT 4</u>

Count 4 of the indictment charges of the indictment charges Rankin with Sex Trafficking of a Juvenile, in violation of 18 U.S.C. § 1591(a).  The statute provides:

> (a)Whoever knowingly—
>> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
>> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

To find the defendant guilty of this count, the Government must prove all the following elements beyond a reasonable doubt:

> (1) The defendant knowingly recruited, enticed, harbored, transported, provided, obtained, maintained, patronized or solicited a person, namely Victim #1.
>
> (2) The defendant knew or recklessly disregarded the fact that Victim #1 was under 18 years old and would be caused to engage in a commercial sex act.
>
> (3) The offense was in and affected interstate and foreign commerce.

Sixth Circuit Pattern Jury Instructions, 2016 Edition, § 16.12 (modified).

The statute proscribes two separate means by which a person can cause another to engage in a commercial sex act: (1) means of force, threats of force, fraud, coercion, or any combination of such means; or (2) that the person has not attained the age of 18 years.  Rankin was originally indicted under both theories; the government, however, has elected to proceed only under the latter option, that Victim #1 had not attained the age of 18 years.  (R. 21: Superseding Indictment,

PageID 62).  Therefore, the government is not required to prove force, fraud, or coercion at all. *See United States v. Elbert*, 561 F.3d 771, 777 (8th Cir.2009) ("Because the victims were minors and could not legally consent, the government did not need to prove the elements of fraud, force, or coercion, which are required for adult victims.").  Instead, the government need only prove that Rankin knew, or acted in reckless disregard of the fact, that Victim #1 was less than eighteen years old and would be caused to engage in commercial sex acts. 18 U.S.C. § 1591(a); *see also United States v. Mack,* 808 F.3d 1074, 1081; *United States v. Pringler*, 765 F.3d 445, 449 (5th Cir. 2014); *United States v. Jackson*, No. 14–3548, 622 F. App'x. 526, 527–28, 2015 WL 4665101, at *2 (6th Cir. Aug. 6, 2015).

<u>Element 2 (Mens Rea)</u>

While "§ 1591(a) and § 1591(c) provide the government with three distinct options— prove beyond a reasonable doubt that: (1) the defendant had knowledge of the victim's underage status; (2) the defendant recklessly disregarded that fact; or (3) that the defendant had a reasonable opportunity to observe the victim," *United States v. Robinson*, 702 F.3d 22, 32 (2d Cir. 2012), the indictment herein only charged the first two options, namely, that Rankin knew that Victim #1 was a minor or recklessly disregarded her minor status, thereby omitting the third option as a stand-alone method of proving *mens rea*. (R. 21: Indictment, PageID 62).

The government, however, proposes the following language be included in the Court's instruction relative to recklessness:

> "In evaluating this element, you may consider whether the defendant had a reasonable opportunity to observe Victim #1."
>
> The government may prove this element by proof beyond a reasonable doubt of one of the following:
>
> (A)     That the defendant actually knew that Victim #1 was under the age of eighteen; or

(B)     That the defendant was in reckless disregard of the fact that Victim #1 was under the age of eighteen.

This proposed instruction was given in *United States v. Purnell*, 740 Fed.Appx. 485, 489 (6th Cir. 2018) (identical jury instruction given); *United States v. Jackson*, 622 F. App'x. 526 (6th Cir. 2015)(On appeal the Sixth Circuit stated "juries are entitled to consider many different types of facts when determining whether a defendant recklessly disregarded a victim's minority status, including the victim's appearance or behavior, [i.e., the defendant's observations of the victim], 'information from the victim or others, and circumstances of which a defendant was aware, such as the victim's grade level in school, or activities in which the victim engaged"); and *See also United States v. Mack*, Case No. 1:13CR278, 2014 WL 356502, *4 (N.D. Ohio Jan. 2014) (unpublished), 808 F.3d 1074 (6th Cir. 2015).  As proposed, the opportunity to observe the victim is not a stand alone method of proving *mens rea*, rather a factor that may be considered by the jury to find recklessness.

Second, any potential evidence that Victim #1 at any time informed the defendant that she was not a minor is not dispositive of the jurors' duty to determine whether the defendant knew or recklessly disregarded the fact that Victim #1 was under 18 years old.  Section 1591 does not permit a defendant to remain willfully ignorant of facts casting serious doubt on a victim's verbal affirmance that she has reached the age of majority.  See *United States v. Jackson*, 622 F. App'x 526, 528–29 (6th Cir. 2015), *citing United States v. Phea*, 755 F.3d 255, 261 (5th Cir. 2014) (the touchstone for whether a defendant recklessly disregards a victim's age is whether there are facts that "would cause a reasonable person to question whether the victim was actually eighteen years old").  To that end, juries are entitled to consider many different types of facts when determining whether a defendant recklessly disregarded a victim's minority status, including the victim's "appearance or behavior," "information from the victim, or others,"

and "[c]ircumstances of which a defendant was aware, such as the victim's grade level in school, or activities in which the victim engaged[.]" *Id.*

Other circuits have declined to reverse § 1591 convictions where the defendant initially believed his or her victims were of age, but later encountered reasons to doubt that belief. *United States v. Rivera*, 558 F. App'x 971, 975 (11th Cir.2014) (in affirming the defendant's conviction for trafficking a minor under § 1591, reasoning that "even if Rivera was misled as to [her victim's] age at first, she learned [that her victim] was a minor during the time Rivera [and her codefendant] were still arranging prostitution dates for [the victim]"); *United States v. Redd*, 511 F. App'x 656, 658 (9th Cir. 2013) (defendant's argument that he did not know the victim's true age "falters on [the victim's] testimony that she told [the defendant] her true age near the beginning of their relationship").

The term "commercial sex act" means "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). The statute does not require that a commercial sex act actually be completed; rather, it only requires that the defendant be aware that the situation into which he is recruiting, enticing, transporting, etc. the person will in the future most likely result in prostitution. *See, e.g.*, *United States v. Brooks*, 610 F.3d 1186, 1197, n.4 (9th Cir. 2010) (even when person never engaged in a commercial sex act, knowledge of a future act is not required to be proven in the sense of certainty if the defendant is aware of a modus operandi that will in the future result in prostitution). The "future verb tense of the phrase 'will be caused' – which precedes 'to engage in a commercial sex act' – indicates that a sex act does not have to occur to satisfy the elements of the [ ] sex-trafficking offense. To conclude otherwise erases the meaning of 'will be' from the statutory text." *United States v.*

*Willoughby*, 742 F.3d 229, 241 (6th Cir. 2014) (citing *United States v. Garcia-Gonzalez*, 714 F.3d 306, 312 (5th Cir. 2013)).

<div align="center">Element 3</div>

The government must prove that Rankin's recruiting, enticing, harboring, transporting, providing, obtaining, or maintaining was done "in or affecting interstate or foreign commerce." 18 U.S.C. § 1591(a). "The phrase 'affecting commerce' indicates Congress' intent to regulate to the outer limits of its authority under the Commerce Clause." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). Congress' authority to regulate interstate commerce includes the authority to regulate the instrumentalities thereof. Id. citing *United States v. Weathers*, 169 F.3d 336, 342 (6th Cir.1999); *See also Gonzales v. Raich*, 545 U.S. 1, 18 (2005) (holding that Congress has the authority to regulate purely intrastate activities that are part of a larger class of activities that have a substantial effect on interstate commerce). Moreover, Congress has specifically found that, in the aggregate, sex-trafficking activities "substantially affect[ ] interstate and foreign commerce." 22 U.S.C. § 7101(b)(12). *United States v. Willoughby*, 742 F.3d 229, 240 (6th Cir. 2014).

Although many cases identify several links between sex trafficking and interstate or foreign commerce, only a single instrumentality affecting interstate or foreign commerce is required. For example, the Eleventh Circuit held that a defendant who furnishes prostitutes with condoms manufactured outside the state supports a finding that the enterprise affected interstate commerce. *United States v. Pipkins*, 378 F.3d 1281, 1295 (11th Cir. 2004), *vacated on other grounds,* 544 U.S. 902, *opinion reinstated,* 412 F.3d 1251 (11th Cir.), *cert. denied,* 546 U.S. 994 (2005).

E.    COUNT 5

Count 5 of the indictment charges Rankin with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a).  The statute provides:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a).

To find the defendant guilty of this count, the Government must prove all the following elements beyond a reasonable doubt:

> (1) The defendant used, persuaded, enticed or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct.

> (2) The defendant had reason to know that the visual depiction would be transmitted using any means or facility of interstate commerce or that such visual depiction would be produced using materials that had been mailed, shipped or transported in or affecting interstate commerce by any means, including by computer.

Sixth Circuit Pattern Jury Instructions, 2019 Edition, § 16.01.

## II.    Statement of Facts

If the case proceeds to trial, the United States intends to offer evidence described below. Rankin, a 34-year-old man, met Victim #1, a 15-year-old girl, in May 2019.  Victim #1 was a runaway, who had been homeless and living on the streets for approximately three months.  She had no money, no assets, and no family support.  Rankin brought Victim #1 to live with him at

his home, which he shared with his mother and other family members. They made her feel like part of their family, referring to her with a nickname and treating her at times like a little sister. Victim #1 stayed with Rankin until September 28, 2019, during which time Rankin sold her for sex.

At first, Rankin used Victim #1 to help him sell drugs. He tasked her with security to make sure that he was not robbed. Specifically, he made her hold his gun, drugs, and money, and assist with weighing the drugs. As the trust between them grew, Rankin began having Victim #1 deliver drugs to customers.

Then, Rankin began selling Victim #1's for sex to raise money that he used primarily to purchase more drugs to sell. He took photographs of her, including images exposing her genitalia, and used them in online commercial sex advertisements on the commercial sex website "Megapersonals." He set her up with buyers of commercial sex to engage in commercial sex acts, drove her to them or arranged for her transportation through car services and family, and collected all the money that the sex buyers gave her. He used the money to purchase drugs to sell, clothing, and an SUV, relying heavily on her commercial sex income to provide the money they needed.

At times, Rankin treated Victim #1 as a love interest and engaged in sex acts with her. But she was not the only one who he dealt with. He lured other women to the house with the sale of drugs, then convinced them to prostitute for him. He also used a photograph of Victim #1 and Victim #2 in a Megapersonals commercial sex advertisement, offering a two girl special.

On September 28, 2019, Victim #1 got into a car accident while she was delivering drugs for Rankin. She attempted to run back to Rankin's house, at his direction, but police found her close to the scene and took her into custody. The defendant's brother, a convicted sex offender

prohibited from being in the company of minors, was a front seat passenger and was injured in the crash.

On October 30, 2019, Department of Homeland Security (HSI) agents executed a search warrant at Rankin's residence on Dove Avenue in Cleveland as part of their investigation into his sex trafficking of Victim #1. The Cleveland HSI agents had assistance from the HSI Special Response Team (SRT) due to Rankin's violent criminal history and intelligence that Rankin was routinely armed. As the SRT agents attempted to move to their positions around the perimeter of the residence, and while on a vacant lot next door to Rankin's residence, Rankin fired six shots in rapid succession at the agents through the dark tinted window of his SUV that was parked in the driveway. One HSI agent then fired one round at the SUV that struck the SUV in the pillar. Officers arrested Rankin on scene and recovered from his Mercedes Benz SUV his Kahr Arms .45 caliber pistol, six spent rounds of .45 caliber ammunition, drugs and two cellular telephones.

## III.  Anticipated Evidentiary Issues

### a.  Direct Examination of Minors

Victim #1 is an 18-year-old girl. She was 15 years old at the time she was trafficked by Rankin. She is sometimes soft-spoken and difficult to hear. Victim #1 dropped out of high school and has spent a significant number of years living on the street. She further aware of the results of the defendant's Prior criminal cases. The Government therefore respectfully requests leeway from the Court in the use of leading questions on her direct examination.

"Federal courts have [] found that leading questions on direct examination are permissible in questioning certain witnesses, including a child sexual abuse victim, a foreign witness testifying through a translator, an unusually soft-spoken and frightened witness, and a mentally retarded adult who was the victim of sexual abuse." *Jordan v. Hurley*, 97 F.3d 360,

362-63 (6th Cir. 2005) (*citing United States v. Ajmal*, 67 F.3d 12, 15–16 (2d Cir.1995) (holding that the Sixth Amendment permits leading questions on direct examination of a foreign witness testifying through a translator); *United States v. Castro–Romero*, 964 F.2d 942, 943–44 (9th Cir.1992) (holding that the Sixth Amendment permits leading questions on direct examination of a child sexual abuse victim); *United States v. Grey Bear*, 883 F.2d 1382, 1393 (8th Cir.1989) (recognizing that the Sixth Amendment permits leading questions on direct examination in the case of an unusually soft-spoken and frightened witness); *United States v. Goodlow*, 105 F.3d 1203, 1207–08 (8th Cir.1997) (recognizing that Federal Rule 611(c) does not preclude frequent use of leading questions during the direct examination of a mentally retarded adult who was the victim of sexual abuse)). *See also United States v. Birdsong*, 330 F. App'x 573 (6th Cir. 2009) (prosecutor permitted to use leading questions on direct examination of a "frightened witness").

Indeed, it is "well recognized that the use of leading questions during the direct examination of a witness falls within the sound discretion of the trial court." *United States v. Shoupe*, 548 F.2d 636, 641 (6th Cir.1977). Because of Victim #1's age and other identified considerations, the Government requests leeway from the Court in the use of leading questions on the direct examination of Victim #1.

### b. Authentication and Presentation of Text Messages Recovered from Defendant's and Victim #1's Cellular Phones.

### i. Authentication of text messages under FRE 901 and 902(14).

Federal Rule of Evidence 901 provides, in pertinent part, that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." The proponent's burden "is not high—only a prima facie showing is required, and a district court's role is to serve as gatekeeper in assessing whether the proponent has offered a satisfactory

foundation from which the jury could reasonably find that the evidence is authentic." *United States v. Cornell*, 780 F.3d 616, 629 (4th Cir. 2015) (internal citation and quotation omitted).

Federal Rule of Evidence 902(14), which was adopted in 2017, provides that the following types of electronic evidence are self-authenticating:

> **(14) Certified Data Copied from an Electronic Device, Storage Medium, or File.** Data copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12). The proponent also must meet the notice requirements of Rule 902(11).

Fed. R. Evid. 902(14). Here, the Government filed a notice of intend to introduce self-authenticating electronic images pursuant to Federal Rule of Evidence 902(14). (R. 65: Notice of Intent; PageID 251). That notice complied with the requirements of 902(11) and (14) and included a certification signed by HSI Special Agent Salvatore Piazza, who conducted the extraction. To date, Rankin has offered no objection to the authenticity of the extraction.

The only remaining issue relating to authentication of cell phone evidence is whether the jury can attribute the evidence from Rankin's cellular phones to Rankin and evidence from Victim #1's cellular phone to Victim #1. They can. Courts have consistently held that when law enforcement recovers a cell phone from or near the defendant, and that phone contains information tying it to the defendant, then text messages recovered from the phone may be authenticated and attributed to the defendant. *See, e.g.*, *United States v. Lewisbey*, 843 F.3d 653, 658 (7th Cir. 2016) (text messages from Samsung cell phone properly authenticated where (1) police seized cell phone from defendant's room, (2) phone contained contact information for the defendant's former employer, and (3) defendant had previously used the phone to arrange gun sale to confidential informant); *United States v. Mebrtatu*, 543 F. App'x 137, 140-41 (3d Cir.

2013) (text messages from cell phone properly authenticated where police seized phone from defendant's person, and texts recovered from the phone addressed the defendant and her co-defendants by name); *United States v. Ellis*, No. 12-CR-20228, 2013 WL 2285457, at *1 (E.D. Mich., May 23, 2013) (text messages from cell phone properly authenticated as being authored by defendant where (1) the phone was recovered from the defendant's person, (2) the phone contained pictures of the defendant and his car, (3) the phone contained contacts for the defendant's brother and girlfriend, and (4) the phone contained texts addressed to the defendant by name); *United States v. Benford*, No. CR-14-321-D, 2015 WL 631089, at *4-6 (W.D. Okla., Feb. 12, 2015) (text messages properly authenticated as being authored by defendant where (1) the phone was recovered from defendant's person, (2) defendant provided police with passcode to unlock phone, (3) and text messages on phone contain monikers that identify defendant).

Here, witnesses will testify that both phones were recovered from Rankin's Mercedes. Victim #1 will also testify that both phones belonged to Rankin. Further, the phone numbers correspond to various electronic service providers used by Rankin and the phone number for the iPhone matches the number provided to law enforcement. With respect to Victim #1's phone, she will testify that the phone recovered and extracted was in fact her own. In short, the Government will offer ample evidence to authenticate the text messages as being sent by Rankin and Victim #1 under Rules 901 and 902(14).

Federal courts have allowed the introduction of electronic conversations transferred into other formats, so long as the substance of the conversation is not altered or amended. *See, e.g.*, *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007) (transcripts of instant message conversations "largely cut from [a detective's] electronic communications [with defendant] and then pasted into word processing files" were sufficiently authenticated by detective and

informant); *United States v. Culberson*, No. 05-80972, 2007 WL 1266131, at *2 (E.D. Mich. Apr. 27, 2007) (transcriptions of emails copied verbatim by federal agent were authenticated through" testimony from the preparer of the transcript and participants in the original emails"); *Porter v. United States*, No. 08-CV-1497, 2008 WL 5451011, at *3 (E.D.N.Y. Dec. 31, 2008) (transcripts of instant messenger conversations authenticated where "the prosecution offered in evidence transcripts of the instant messenger conversations in the form of a WordPerfect document created using a cut-and-paste method, which preserved the conversations in their entirety"); *United States v. Lundy*, No. 10-60986, 2012 WL 1021795, at *6 (5th Cir. 2012) (upholding the admission of transcripts of online chats through Yahoo! that a detective copied and pasted into a word processing program that accurately reflected the contents of the chats).

Further, Federal Rule of Evidence 1006 provides that a proponent may use "a summary, chart or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." The admission of evidence under Rule 1006 is within the discretion of the district court. *United States v. Williams*, 952 F.2d 1504, 1519 (6th Cir. 1991) ("Defendant has not shown how the charts in question unfairly prejudiced him. The district court thought they were 'classic visual aids' and admitted them to aid the jury in its analysis of the case. That action was well within the district court's discretion.").

In *United States v. Osborne*, 667 F. App'x 648 (11th Cir. 2017), the Eleventh Circuit upheld the admission of summary exhibits that were substantially like the ones the Government intends to offer here. In *Osborne*, the Government introduced summaries of a number of text messages that were sent and received as part of a bank robbery. *Id*. at 651-53. The Government created summary exhibits from approximately 10 pages of underlying Verizon phone records that included the texts themselves, dates, times, and whether the text messages were outgoing or

incoming.  *Id*. at 651-56. Osborne objected to the summary exhibits on the grounds that "a single

incoming text message consisting of 29 words [did] not constitute 'voluminous writings' to

warrant its separate admission as [a] summary exhibit."  *Id*. at 656.

The Eleventh Circuit rejected Osborne's claim and upheld the trial court's admission of

the text summaries.  *Id*.  First, the Eleventh Circuit reasoned that the trial court properly

instructed the jury on the role of summary exhibits.  *Id*.  Second, although the underlying

Verizon records consisted of only 10 pages, they were nonetheless "complicated and

disorganized" in that a witness could not have conveniently located and read the texts.  *Id*.  The

Eleventh Circuit noted that the summary exhibits made the Verizon records "much more easily

accessible and understandable to the jury."  *Id*.  And finally, Osborne had the opportunity to

cross-examine the witness who presented the summary exhibits about their accuracy.  *See id*.

Here, as in the cases cited above, presenting the jury with summaries of the extraction

report would assist their understanding of the case without causing any unfair prejudice to

Rankin. The extraction report is difficult to read because it displays texts from bottom-to-top and

often requires the reader to skip over extraneous conversations. The summaries simply copy-and-

paste all the relevant information into a mock smartphone display that jurors are likely to

recognize. And Rankin—who has already been provided with copies of the summaries and the

corresponding pages from the extraction reports—will be free to cross-examine the witness who

presents these summaries as to their accuracy.  In short, the text message summaries will make

for a more efficient trial and an easier to understand case.

### c.  **Authentication and Presentation of Spotlight records.**

Federal Rule of Evidence 901 provides, in pertinent part, that "[t]o satisfy the

requirement of authenticating or identifying an item of evidence, the proponent must produce

evidence sufficient to support a finding that the item is what the proponent claims it is." The proponent's burden "is not high—only a prima facie showing is required, and a district court's role is to serve as gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." *Cornell*, 780 F.3d at 629 (internal citation and quotation omitted).

The Government intends to introduce copies of Victim #1's commercial sex advertisements that Rankin posted on Megapersonals. HSI Special Agents retrieved data and copies of these advertisements from Megapersonals and using the law enforcement program, Spotlight. To authenticate the Spotlight records, the Government must only make a prima facie showing that they are in fact postings from Victim #1's Megapersonals page. Authentication may be accomplished through the testimony of a witness with knowledge. Fed. R. Evid. 901(b)(1); *United States v. Lanzon*, 639 F.3d 1293, 1301 (11th Cir. 2011). Here, Victim #1 will corroborate that the records obtained through Spotlight are in fact the same records that Rankin posted on Megapersonals soliciting her for commercial sex acts. Victim #1 has previously identified the photographs in the Megapersonals ads and is familiar with what was stated by Rankin about her in the postings. *See United States v. Macaluso*, 460 F. App'x 862, 870 (11th Cir. 2012) (affirming admission of "online chats and emails because the victims' testimony that the Government's exhibits accurately portrayed their online communications with [defendant] was sufficient to authenticate the evidence."). Additionally, HSI Special Agent Larry Sullin will testify as to how the records were retrieved using Spotlight. Both witnesses' testimony will be further supported by self-authenticating business records from Megapersonals and Google, which will link post ID numbers from the ads retrieved through Spotlight to the post ID numbers

in the Megapersonals records and dates on the ads to confirmation emails in Rankin's Google account.[2]

### d. Rankin should not be permitted to present his own self-serving exculpatory statements.

It is well-settled that defendants cannot seek to introduce their own self-serving exculpatory statements. *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) (citing *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996), *cert. denied*, 522 U.S. 934 (1997)). Indeed, while the Federal Rules of Evidence allow the Government to introduce inculpatory statements made by a defendant, the "Rules do not, however, provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party." *Id.* Thus, while the Government is permitted to introduce some or all a defendant's statements against him as non-hearsay admissions of a party-opponent under Rule 801(d)(2), a defendant is not permitted to introduce his own statements under the same Rule.[3] For example, a defendant may try to introduce his own out-of-court exculpatory statements in the form of witness testimony. This evidence would clearly be inadmissible hearsay.

This rule applies equally to the evidence the defendant seeks to introduce in his own case as it does to the evidence he tries to elicit through the cross-examination of witnesses. Because the Government may introduce portions of the defendant's statements, primarily in the form of

---

[2] The Government provided notice of intent to use business records without custodian of record pursuant to Federal Rule of Evidence 902(11) with respect to the Megapersonals and Google records on December 16, 2021. (R. 59: Notice of Intent, PageID 190).

[3] The Government is permitted to introduce portions of a defendant's statements that are admissible under an applicable hearsay exception and redact the remaining portions of the statement which could be exculpatory. *See United States v. Gallagher*, 57 F. App'. 622, 626 (6th Cir. 2003) (upholding parsing of defendant's statement to exclude self-serving exculpatory portions that related to defendant's entrapment defense).

witness testimony, it anticipates that the defendant may seek to introduce additional portions of the statements into evidence pursuant to Rule 106, most likely in the form of cross-examination of the same witness.  The "rule of completeness," however, does not override the prohibition against self-serving, exculpatory statements.  *Gallagher*, 57 F. App'x at 628-29.  The "completeness doctrine embodied in Rule 106 should not be used to make something admissible that would otherwise be excluded." *Id.*, *quoting Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 718 (6th Cir. 1999); *see also United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982).  If the Government were seeking to mislead the jury regarding the actual meaning of one of the defendant's admissions, the completeness doctrine might be implicated.  That, however, is not the case here.

> **e.  Rankin's knowledge of whether the individuals he allegedly shot at were law enforcement officers is irrelevant, and the Court should exclude evidence or argument of such knowledge.**

Rankin is charged with one count of Assault of a Federal Officer, in violation of 18 U.S.C. § 111(a), based on his alleged shooting at HSI agents during their execution of a search warrant on his residence.  One of the elements of this offense is that the victim is in fact a federal officer acting in the course of his or her duties at the time of the assault.  *United States v. Rafidi*, 829 F.3d 437 (6th Cir. 2016).  The Government need not prove, however, *that the defendant knew* of the individual's status as a federal officer at the time of the assault.  *Id.* (listing elements of § 111(a) and (b) and defining "forcibly"); *United States v. Kimes*, 246 F.3d 800 (6th Cir. 2001) (listing elements of § 111(a) and holding that assault on a federal officer is a general intent crime); *United States v. Feola*, 420 U.S. 671, 684 (1975) (stating that "[a]ll [18 U.S.C. § 111] requires is an intent to assault, not an intent to assault a federal officer.").  Accordingly, any

evidence or argument regarding Rankin's knowledge of whether the victims of the shooting were law enforcement officers is irrelevant and inadmissible.  *See* Fed. R. Evid. 401, 402.

As discussed below, evidence of Rankin's perception of who was approaching his home *may* be relevant.  As explained in greater detail below, Rankin must make a preliminary showing before being entitled to an affirmative defense instruction.  If the Court ultimately issues such an instruction, it should also instruct the jury that Rankin's knowledge of the agents' status is relevant only for purposes of evaluating Rankin's affirmative defense and is not relevant to the elements of the crime charged in Count 1.

### f.  Self-Defense

As described above, in Count 1, Rankin is charged with Assault of a Federal Officer, in violation of 18 U.S.C. § 111(a) and (b), and in Count 2, he is charged with Using, Carrying, and Discharging a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(i)(A)(iii).  These two Counts are interrelated because to prove Count 2, the Government must prove that Rankin committed Count 1.

### i.  Rankin is not entitled to raise self-defense as it is defined in the 6th Circuit instructions.

The Government anticipates that Rankin will attempt to raise self-defense as a defense to Count 1.[4]  As an initial matter, self-defense is explained to jurors in the Sixth Circuit as follows: "A person is entitled to defend *himself* against the immediate use of unlawful force. But the right

---

[4] The Government makes this assumption based upon conversations with defense counsel. At this stage, however, the Government does not know how Rankin intends to introduce evidence of self-defense, whether it be through his own testimony or the testimony of others.  If Rankin intends to call certain witnesses to establish his claim of self-defense, the Court may need to inquire into whether these witnesses are entitled to Fifth Amendment privileges, namely whether standby counsel should be available during trial.  The Government cannot make such a determination at this stage, because these potential witnesses have not been identified by the defense nor any reciprocal discovery provided to date.

to use force in self-defense is limited to using only as much force as reasonably appears to be necessary under the circumstances." Sixth Circuit Pattern Criminal Jury Instructions, 2019 Edition, § 6.06 (emphasis added). These instructions are limited to defense of oneself, not another person or one's home. *See United States v. Hamilton*, No. 3:12cr49, 2016 WL 6432825, at *5 (S.D. Ohio Oct. 28, 2016) ("[T]he federal defense does not include the 'castle' doctrine. . . Federal appellate courts have refused to add instructions along the lines of the castle doctrine.").

After his arrest on October 30, 2019, Rankin told Cleveland Division of Police that he had concerns about a man named Meech, who Rankin believed was a threat to him and his family. Rankin also stated that he was sitting in his car in the driveway to protect his family and prevent Meech from breaking into his home. Rankin stated that when he saw men with guns running up his driveway, he was not sure what was going on, which is when he began shooting. At no point did Rankin tell CDP that he was defending himself—not his family or his home—against the immediate use of unlawful force. And even if Rankin believed that Meech was a threat to him, there is no evidence to indicate that anyone who Rankin could have believed was Meech approached the vehicle with immediate force. Indeed, law enforcement did not know Rankin—or anyone—was in the vehicle in the driveway until Rankin began shooting. As a result, Rankin is not entitled to raise self-defense as an affirmative defense to the charge of assaulting a federal officer.

### ii. If Rankin is entitled to raise self-defense, he must make a sufficient showing that the defense is viable.

If, however, the Court determines that Rankin is entitled to raise self-defense, he must make a sufficient showing that the defense is viable. Specifically, "a defendant is entitled to an instruction on a recognized affirmative defense 'whenever there is sufficient evidence from which a reasonable jury could find for him on the issue.'" *United States v. Oliveri*, No. 09-20-

GFVT, 2010 WL 2835731, at *4 (E.D. Ky. July 16, 2010) (quoting *Newton v. Million,* 349 F.3d 873, 878 (6th Cir. 2004) and citing *Matthews v. United States,* 485 U.S. 58, 63–64, 108 S. Ct. 883, 99 L.Ed.2d 54 (1988)).

Here, Rankin must make a showing that there is sufficient evidence from which a reasonable jury could find: (1) that he had "a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of unlawful force," and (2) that he used "no more force than was reasonably necessary in the circumstances." *United States v. Weekes*, 517 F. App'x 508, 510–11 (6th Cir. 2013) (internal citations omitted); *see also United States v. Urena*, 659 F.3d 903, 906–07 (9th Cir. 2011) ("To be entitled to a self-defense jury instruction, a defendant must make a prima-facie case of self-defense by offering evidence to show: (1) a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of unlawful force and (2) the use of no more force than was reasonably necessary in the circumstances.") (citation omitted); Sixth Circuit Pattern Criminal Jury Instruction, 2019 Edition § 6.06. At trial, if Rankin attempts to raise the affirmative defense of self-defense, the Court must require him to make a sufficient showing as to these two elements.[5]

> ### iii. The Government and Defendant do not agree on the appropriate self-defense instruction.

---

[5] The Court will determine whether Rankin made a sufficient showing of self-defense at the close of his case. If the Court determines that Rankin met the required threshold for self-defense, the Government agrees that the Sixth Circuit Pattern Criminal Jury Instruction, § 6.06, is the proper instruction.

The parties have exchanged draft proposed self-defense instructions but do not agree on the appropriate instruction. The Government has proposed the Sixth Circuit Pattern Instruction § 6.06, which states:

> (1) One of the questions in this case is whether the defendant acted in self-defense.
>
> (2) A person is entitled to defend himself against the immediate use of unlawful force. But the right to use force in self-defense is limited to using only as much force as reasonably appears to be necessary under the circumstances.
>
> (3) The government has the burden of proving that the defendant did not act in self-defense. For you to find the defendant guilty, the government must prove that it was not reasonable for him to think that the force he used was necessary to defend himself against an immediate threat. Unless the government proves this beyond a reasonable doubt, you must find him not guilty.

The Defendant has proposed an instruction that states: "A person is entitled to defend himself against the immediate use of what he reasonably believes is unlawful force." In support of that instruction, he cites *United States v. Feola*, 420 U.S. 671, 686 (1975), and *United States v. Bates*, 960 F.3d 1278, 1289 (11th Cir. 2020).[6] However, his proposed instruction is not the self-

---

[6] *Feola* involved a classic fact pattern of co-defendants engaging in a narcotics transaction 'rip-off' with an undercover federal agent. However, *Feola* did not find that the proposed instruction was warranted. In *Feola*, the court held that "in order to incur criminal liability under § 111 an actor must entertain merely the criminal intent to do the acts therein." In dicta, the court qualified that it was not "implying that the defendant's state of knowledge is never a relevant consideration under § 111. . . there may well be circumstances in which ignorance of the official status of the person assaulted or resisted negates the very existence of mens rea. For example, where an officer fails to identify himself or his purpose, his conduct in certain circumstances might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property." *Id*., 886. *Bates* involved law enforcement attempting to execute search warrants, who knocked and announced as "police," received no response even though Bates was inside, and as the door was rammed Bates shot twice through the door striking an officer. Bates then called 911 exclaiming "the police at my door. . . tell them not to shoot me. . . I thought it was somebody trying to come in." Bates was convicted and appealed the exclusion of psychiatric testimony, medical records, and a self-serving statement claimed to be an excited utterance he alleged supported his self-defense claim. Bates did not object to the self-defense instruction, he

defense instruction provided in either *Feola* or *Bates*. Defendant has failed to cite to any specific case wherein his proposed self-defense instruction was given. Moreover, the instant facts are easily distinguished from the cases cited. The instant facts involved federal agents dressed in tactical gear, which clearly identified them as law enforcement, without weapons drawn, who had barely set foot on the property line of the residence, with no visible person to 'identify' themselves to, with Rankin firing the first six shots as the aggressor, not in defense.

### iv. The Government will disprove Rankin's claim of self-defense.

If Rankin attempts to raise self-defense as an affirmative defense to Counts 1 and 2, the Government intends to disprove that defense in various ways. The Sixth Circuit Pattern Jury Instructions do not include an instruction for Assault of a Federal Officer, which is why the Government's proposed jury instructions for Count 1 come from the 11th Circuit. Thus, 11th Circuit caselaw is likewise instructive on how to disprove self-defense in this context. In *United States v. Alvarez*, the defendant shot and killed an undercover ATF agent during a botched drug transaction. 755 F.2d 830 (11th Cir. 1985). The defendant alleged that he thought the undercover agents were members of the Mafia and that he acted in self-defense. *Id.* at 841. As discussed above, while it is true that the Government does not have to prove knowledge of a federal agent for Assault of Federal Officer, knowledge becomes relevant if the defendant raises self-defense. *Id.* at 842-43. The Government can negate a claim of self-defense by proving that the defendant knew the victim was law enforcement or that the defendant was the aggressor or used excessive force. *Id.* at 843, 847.

---

objected to the court's exclusion of certain evidence he believed supported his self-defense claim. Therefore, neither *Feola* nor *Bates* supports Rankin's proposed self-defense instruction.

Here, the Government will introduce testimony from the agents on scene on October 30, 2019, that they were all dressed in uniform and gear that clearly indicated they were law enforcement.  Agents will also testify that Rankin was the aggressor. Law enforcement did not return fire at Rankin until after he had fired six shots. This anticipated testimony from law enforcement, in addition to other evidence the Government intends to introduce at trial, will defeat Rankin's claim of self-defense.

## IV.    Estimated Length of Trial

The Government anticipates that the trial of this case will last approximately seven to ten days.

## V.    Legal Issues

### a.  Sequestration of Witnesses

The United States respectfully requests that the Court issue a witness-sequestration order pursuant to Federal Rule of Evidence 615.

### b.  The Court Should Permit Victim #1 to have an Adult Attendant in the Courtroom During her testimony

The Government moves this Court to permit Victim #1 to have an adult attendant in the courtroom during her testimony.  18 U.S.C. § 3509(i) states "[a] child testifying at or attending a judicial proceeding shall have the right to be accompanied by an adult attendant to provide emotional support to the child."  Even given the special set-up to social distance jurors during the trial, Victim #1 is entitled to an adult representative *in the courtroom* and not in a satellite room set up with a video feed.

## VI.    Trial Documents

### a.  Joint Preliminary Statement

Please see the attached Joint Preliminary Statement, Exhibit 1 to the United States' trial brief.

### b. Stipulations

Please see the attached Stipulations, Exhibit 2 to the United States' Trial Brief.

### c. Proposed Jury Instructions

Please see the attached Joint Proposed Jury Instructions and the United States' Proposed Jury Instructions, filed seperately. The Sixth Circuit does not have a pattern instruction for assault on a federal officer, in violation of 18 U.S.C. § 111. The Sixth Circuit has addressed the elements of § 111(a) and (b), as well as definitions of the statutory terms in case law, which the United States used to create the proposed instruction. Additionally, considering the Supreme Court's recent decision in *Rehaif*, 139 S. Ct. at 2196, the United States added to the pattern instruction that Rankin had knowledge of his conviction at the time of the alleged possession.

### d. Proposed Voir Dire Questions

Please see the United States' Proposed *Voir Dire* questions, filed separately.

## VII. Conclusion

The United States is prepared to submit additional briefing on any issue should the Court or circumstances require.

<div style="margin-left:40%">

Respectfully submitted,

BRIDGET M. BRENNAN
United States Attorney

By:    /s/ Carol M. Skutnik
Carol M. Skutnik (OH: 0059704)
Edward F. Feran (OH: 0039083)
Vanessa V. Healy (OH: 0092212)
Assistant United States Attorneys
United States Court House
801 West Superior Avenue, Suite 400

</div>

Cleveland, Ohio 44113-1852
(216) 622-3785/3709/3652
(216) 522-8355 (facsimile)
E-mail: Carol.Skutnik@usdoj.gov
E-mail: Edward.Feran@usdoj.gov
Email: Vanessa.Healy@usdoj.gov